UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RANDAL HALL,<br><br>                            Plaintiff,<br><br>    v.<br><br>SIRIUS XM RADIO, INC.,<br><br>                            Defendant. | No.<br><br>CLASS ACTION COMPLAINT |

Plaintiff, for his Class Action Complaint, alleges the following upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon the investigation made by and through his attorneys:

## I. INTRODUCTION

1. Federal law prohibits the use of motor vehicle registration and licensing information by private parties except in specifically enumerated situations. In particular, such information cannot be used for mass marketing purposes without the express consent of the person to whom the information pertains. In direct violation of this prohibition, Defendant Sirius XM Radio, Inc. ("SiriusXM") purposefully and systematically uses private licensing and registration information to send mass marketing materials to vehicle registrants without regard to whether any consent for such mailings has been given.

2. Plaintiff Randal Hall was sent multiple mass mailings by SiriusXM even though

COMPLAINT - 1
Case No.
010338-11 563871 V1



HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  he was never a SiriusXM customer and never gave consent for his licensing and registration
2  information to be used for marketing purposes. Through this lawsuit, Mr. Hall, on behalf of
3  himself and all other persons in the United States who were similarly sent mass marketing
4  materials through the use of licensing and registration information without the required consent,
5  seeks to stop this unlawful invasion of privacy and recover damages as set forth under applicable
6  federal law.

## II. PARTIES

3. Plaintiff Randal Hall is a citizen of the State of Washington, residing in Clark County, Brush Prairie, Washington.

4. Defendant SiriusXM is a citizen of New York and Delaware, with its principal place of business located at 1221 Avenue of the Americas, New York, New York. SiriusXM may be served by its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

## III. JURISDICTION AND VENUE

5. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332(d). Jurisdiction is proper under § 1331 because this action arises under a federal statute, 18 U.S.C. § 2721-25, also known as the Driver's Privacy Protection Act ("DPPA"). Jurisdiction is also proper under 28 U.S.C. § 1332(d) because there are more than one hundred class members, there are members of the plaintiff class who are citizens of different states from SiriusXM, and the aggregate amount in controversy exceeds five million dollars.

6. Venue is proper within this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in this District.

## IV. FACTUAL BACKGROUND

7. SiriusXM is a broadcast company that provides audio programming, including music, news, and information, to subscribers throughout the United States. SiriusXM delivers audio programs to subscribers via satellite radio systems, over the Internet, and on mobile



HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

devices. SiriusXM has over 20 million subscribers.[1]

8. SiriusXM's primary source of revenue is subscription fees. Sirius adds millions of new subscribers each year, and marketing efforts to attract new subscribers are key to SiriusXM's business. *See* SiriusXM 2011 10k at 35.

9. SiriusXM has an agreement with every major automaker in the United States to offer satellite radios in their vehicles. SiriusXM's marketing of its service to car buyers and lessors is its primary means of distributing satellite radios. *Id*. at 1.

10. SiriusXM has made efforts to acquire increasing numbers of subscribers through the sale and lease of previously owned vehicles. As part of these efforts, SiriusXM has developed methods of identifying owners and lessees of previously owned vehicles that have satellite radios installed and has established marketing programs to promote its services to these consumers. *Id.* at 3.

11. A multistate working group of 30 State Attorneys General, led by the Attorney General of the State of Ohio, has been formed to investigate SiriusXM's consumer practices, including its marketing practices. The Attorneys General of Florida and New York are also conducting separate investigations. The Attorney General of Missouri has also commenced an action against SiriusXM for unlawful telephone solicitations. *Id*. at 16.

12. On or about August 7, 2008, Mr. Hall purchased a used car through Auto Solution with a purchase loan from Lacamas Community Credit Union of Vancouver, Washington. The car did not have a satellite radio installed when Mr. Hall bought it, but it did have a satellite antenna, indicating that the car may have had a satellite radio installed at some point in the past.

13. Neither Auto Solution nor Lacamas Community Credit Union gave Mr. Hall any information or papers from SiriusXM, nor did they tell him that the car came with a trial subscription to SiriusXM. Mr. Hall did not consent to share any of his personal information with SiriusXM. Indeed, Mr. Hall was not aware when he bought the car that the car might have ever had a satellite radio installed.

---

[1] *See* SiriusXM Radio, Inc., 2011 Form 10-K Annual Report (Feb. 9, 2012) ("SiriusXM 2011 10K") at 1. *Available at* http://investor.siriusxm.com/secfiling.cfm?filingID=1193125-12-49086&CIK=908937.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

14. As part of its program of identifying owners and lessees of previously owned vehicles that have satellite radios installed, SiriusXM obtained directly or indirectly from state department of motor vehicle records Mr. Hall's personal information, including his name, address, and the vehicle identification number ("VIN") of his car. This information is protected by the DPPA, which prohibits the use of information obtained from state motor vehicle records to send marketing solicitations without the express consent of the individual to whom the information pertains. Mr. Hall never consented to the release of his DPPA-protected personal information for the distribution of marketing solicitations.

15. On information and belief, SiriusXM knew that Mr. Hall had not consented to the use of his personal information to send marketing solicitations and/or made no effort to determine whether Mr. Hall had given any consent and was reckless and willfully blind to Mr. Hall's lack of consent.

16. Beginning on or about April of 2009, Mr. Hall began receiving unsolicited mail at his home in Brush Prairie, Washington from SiriusXM. The mailings stated that Mr. Hall had a "trial subscription" to SiriusXM and attempted to pressure him to renew this "trial subscription." In fact, Mr. Hall had never agreed to subscribe to SiriusXM's service, on a trial basis or otherwise.

17. Mr. Hall was upset and annoyed to receive these unwanted communications. He was also concerned and confused about whether SiriusXM might charge him for a subscription without his consent. Some of the mailings SiriusXM sent Mr. Hall led him to believe that he would be charged for a subscription. Mr. Hall thus could not simply ignore these insistent, intrusive communications. On or about June 15, 2009 and September 7, 2010, Mr. Hall contacted SiriusXM and asked them to remove his name from their mailing list. SiriusXM did not comply with Mr. Hall's request. The mailings continued to arrive for years, even after Mr. Hall had sold the car that SiriusXM apparently believed had a satellite radio. The most recent mailing from SiriusXM was sent to Mr. Hall in August 2012.

18. On or about July 25, 2012, Mr. Hall contacted the Better Business Bureau Serving Metropolitan New York to complain about SiriusXM's unsolicited marketing communications.

COMPLAINT - 4
Case No.
010338-11 563871 V1

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  In response to Mr. Hall's complaint, SiriusXM refused to take responsibility for its violations of
2  the DPPA, forcing Mr. Hall to file this Complaint.

3       19.    Before the DPPA, many states regularly sold drivers' motor vehicle records to
4  marketers to create bulk mail distribution lists. Congress enacted the DPPA in 1994 "to limit the
5  release of an individual's personal information contained in his driver's license record to those
6  who had a legitimate and lawful need for the information." *Kehoe v. Fidelity Fed. Bank & Trust*,
7  421 F.3d 1209, 1210 (11th Cir. 2005).

8       20.    Originally, the DPPA required individuals to "opt-out" of release of their personal
9  information in order to be removed from marketing distribution lists. *Id.* Because of the burdens
10 of the opt-out procedure, even after the DPPA passed, mass marketers remained "free to send a
11 largely unrestricted stream of mailings to motor vehicle drivers and registrants." *In re Imagitas,*
12 *Inc.*, 2008 WL 977333 (M.D. Fla. April 9, 2008). Congress amended the DPPA in 1999 to
13 substitute an "opt-in" procedure for release of personal information. *Kehoe*, 421 F.3d at 1210.
14 Under the current law, no person may knowingly obtain, disclose, or use DPPA-protected
15 information for distribution of bulk marketing solicitations unless the individual to whom the
16 information pertains affirmatively consents. 18 U.S.C. §§ 2721(b)(12).

17      21.    Congress also created a civil DPPA action against persons who knowingly obtain,
18 disclose, or use DPPA-protected information and provided that in such actions a court may
19 award (1) actual damages, but not less than liquidated damages in the amount of $2,500;
20 (2) punitive damages; (3) reasonable attorneys' fees and litigation costs; and (4) appropriate
21 equitable relief. 18 U.S.C. § 2724(b).

22      22.    Even after the DPPA and the 1999 amendments, states may continue to provide
23 comprehensive databases of driver registration and license information to third parties who
24 certify that they have a lawful purpose for the information. *See Taylor v. Acxiom Corp.*, 612 F.3d
25 325, 332 (5th Cir. 2010). Thus, the burden to ensure compliance with the DPPA's requirement
26 that an individual affirmatively consent to release of his or her information for marketing
27 purposes rests on the party that obtains or uses the information for purposes that require consent,
28 such as mass marketing.

COMPLAINT - 5
Case No.
010338-11  563871 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    23.    In its efforts to identify owners and lessees of previously owned vehicles that
2 have satellite radios installed and to promote its services to such persons, SiriusXM violates the
3 DPPA. In knowing, willful, and/or reckless disregard of the law's requirements, SiriusXM has
4 used information obtained from motor vehicle records, including name, address, and VIN
5 information, to send bulk marketing solicitations to used car buyers, including Mr. Hall, with
6 whom it has no customer relationship. SiriusXM makes no effort to determine whether consent
7 to receive mass marketing has been given by the persons to whom such information pertains and
8 thus purposefully ignores the DPPA use restrictions.

### V.    CLASS ACTION ALLEGATIONS

24.    **Class Definition**. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and on behalf of a class (the "Class") initially defined as follows:

> All persons in the United States (including its Territories and the District of Columbia) to whom SiriusXM mailed marketing materials or business solicitations, where such person's name, address or the VIN associated with a purchased vehicle was obtained by SiriusXM directly or indirectly from a motor vehicle record and such mailing was made without the express consent of the person to whom the information pertains.

For purposes of this class definition, the class period is defined as the period beginning four years before the filing of the Original Complaint in this case to the present.

25.    Excluded from the class are all SiriusXM employees, officers, directors, agents, representatives, and their family members and all federal judges who may preside over this case, their spouses, and anyone within three degrees of consanguinity from those judges and their spouses.

26.    **Ascertainability**. The Class is objectively defined so that the members of the Class are ascertainable by reference to SiriusXM's business records and/or State motor vehicle records.

27.    **Numerosity**. **Fed**. **R**. **Civ**. **P**. **23(a)(1)**. The Class is sufficiently numerous that joinder of all members is impractical. Although Plaintiff does not know the exact number of Class members, the Class meets the numerosity requirement. SiriusXM has an agreement with



1  every major automaker in the United States to offer satellite radios in their vehicles and has over
2  20 million subscribers. Thus, millions of vehicles with satellite radios installed, or that at one
3  time had satellite radios installed, are sold as used vehicles every year. SiriusXM has made
4  efforts to acquire increasing numbers of subscribers though the sale and lease of previously
5  owned vehicles and has developed methods of identifying owners and lessees of previously
6  owned vehicles to target with marketing solicitations. These methods include matching name,
7  address, and VIN information from State motor vehicle records protected by the DPPA to VIN
8  numbers of vehicles that have had satellite radios installed and sending marketing solicitations to
9  the registered new owners of such vehicles without making any effort to determine whether the
10 recipients of such solicitations have agreed to receive such communications. The class members
11 may be notified of the pendency of this action by mailed notice at their last known address and
12 published notice.

13      28.     **Existence and Predominance of Common Questions of Law and Fact**. **Fed**. **R**.
14 **Civ**. **P**. **23(a)(2)**. Common questions of law and fact exist as to all members of the Class. These
15 questions predominate over the questions affecting only individual members. These common
16 legal and factual questions include, among other things:

17         a.   Whether SiriusXM obtained or used personal information
                from motor vehicle records for marketing purposes;
18
           b.   Whether SiriusXM made any effort to determine whether
19              the persons to whom such personal information pertained
                provided consent to the use of this information for
20              marketing purposes;

21         c.   Whether SiriusXM acted knowingly, willfully, or
                recklessly in obtaining or using this information; and
22
           d.   Whether an injunction should issue preventing SiriusXM
23              from continuing its policies and procedures that violate the
                DPPA.
24
       29.     **Typicality**. **Fed**. **R**. **Civ**. **P**. **23(a)(3)**. Plaintiff's claim is typical of the claims of
25
   each Class member. Plaintiff is entitled to relief under the same cause of action as the other
26
   members of the Class. Plaintiff's claim that SiriusXM violated the DPPA by obtaining and using
27
   his DPPA-protected personal information for marketing purposes is typical of the claims of Class
28

COMPLAINT - 7
Case No.
010338-11  563871 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

members.

30.     **Adequacy**. **Fed**. **R**. **Civ**. **P**. **23(a)(4)**. Plaintiff is an adequate representative of the Class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and he intends to prosecute this action vigorously and has the resources to do so. The interests of the Class members will be fairly and adequately protected by Plaintiff and his counsel.

31.     **Superiority**. **Fed**. **R**. **Civ**. **P**. **23(b)(3)**. Class certification is appropriate under Rule 23(b)(3) because questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The issues in this litigation involve only whether SiriusXM obtained and illegally used Class members' DPPA-protected information for marketing purposes and do not include any other potential individual disputes between Class members and SiriusXM.

32.     The damages suffered by each Class member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by SiriusXM's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by SiriusXM's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based on a single determination.

33.     **Injunctive Relief Is Appropriate for the Class**. **Fed**. **R**. **Civ**. **P. 23(b)(2)**. Class certification is also appropriate under Rule 23(b)(2) because SiriusXM has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief and corresponding declaratory relief with respect to Plaintiff and the Class members. Specifically,



1   Plaintiff seeks injunctive relief in the form of a court order that SiriusXM cease and desist from
2   obtaining or using DPPA-protected personal information for marketing purposes without
3   determining whether recipients have consented to such use. Plaintiff also seeks declaratory relief
4   that Plaintiff and Class members are entitled to statutory liquidated damages in the amount of
5   $2,500 per violation.

## VI.   CAUSES OF ACTION

### COUNT I
### DRIVER'S PRIVACY PROTECTION ACT

34.   Plaintiff incorporates all paragraphs of this complaint into his Driver's Privacy Protection Act cause of action.

35.   SiriusXM knowingly, willfully, and/or recklessly obtained Plaintiff's and Class members' personal information from motor vehicle records.

36.   Sirius XM knowingly, willfully, and/or recklessly used Plaintiff's and Class members' personal information for an impermissible purpose, namely, for bulk distribution of marketing solicitations without making any effort to determine whether Plaintiff and DPPA Class members had provided consent to such solicitations.

### COUNT II
### DECLARATORY JUDGMENT

37.   Plaintiff incorporates all paragraphs of this complaint into his Declaratory Judgment cause of action.

38.   A present controversy exists between Plaintiff and Class members and SiriusXM regarding whether SiriusXM's obtaining and use of their personal information for marketing purposes violated the DPPA and whether Plaintiff and Class members are entitled to statutory liquidated damages of $2,500 per violation.

39.   Plaintiff is entitled to an order from this Court finding that SiriusXM obtained and used his and the Class Members' personal information in violation of the DPPA and that Plaintiff and Class members are entitled to statutory liquidated damages of $2,500 per violation.

### PRAYER FOR RELIEF

For the reasons stated above, Plaintiff on behalf of himself and the Class, prays for relief



1  as follows:

2      A.    An order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as class representative, and appointing Plaintiff's undersigned counsel as Class counsel;

    B.    Judgment for all damages caused by SiriusXM's violations of the DPPA;

    C.    Judgment for statutory liquidated damages of $2,500 per Class member per violation;

    D.    Declaratory judgment that SiriusXM's policy of sending marketing solicitations to individuals using DPPA-protected information without regard to whether such individuals have consented violates the DPPA and that Plaintiff and Class members are entitled to statutory liquidated damages of $2,500 per Class member per violation;

    E.    Injunctive relief requiring SiriusXM to cease and desist sending marketing solicitations to individuals using DPPA-protected information without first determining whether such persons have consented to such use;

    F.    Punitive damages;

    G.    Attorneys' fees, expenses, and costs;

    H.    Pre-judgment and post-judgment interest as provided by law; and

    I.    Such other relief as the Court deems just, equitable, and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all his claims.

Dated: November 8, 2012.

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: /s/ Steve W. Berman
    Steve W. Berman (WSBA# 12536)
    Thomas E. Loeser (WSBA# 38701)
    1918 Eighth Avenue, Suite 3300
    Seattle, WA 98101
    Telephone: (206) 623-7292
    Facsimile: (206) 623-0594
    steve@hbsslaw.com
    toml@hbsslaw.com



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CADELL & CHAPMAN. P.C.
Michael A. Caddell
Cynthia B. Chapman
Cory S. Fein
Amy E. Tabor
Caddell & Chapman, P.C.
1331 Lamar St., Suite 1070
Houston, TX 77010
Telephone: 713-751-0400
Facsimile: 713-751-0906
Email: csf@caddellchapman.com

COMPLAINT - 11
Case No.
010338-11  563871 V1

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594